1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Nelson Llavata, | Case No.: 2:11-cv-00250-JAD-CWH |
| Plaintiff | **Order Granting Motion for Summary Judgment [Doc. 83], Denying Motion for Reconsideration of Order Sealing Exhibits [Doc. 92], and Directing Action with Respect to Service on Dr. Romeo Aranas** |
| v. | |
| Cole Morrow, et al., | |
| Defendants | |

Pro se plaintiff Nelson Llavata (aka Nelson Pieto) is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). He brings this civil rights action against Bruce Bannister (the Director of Medical Services at NDOC), Assistant Warden Cole Morrow, and Dr. Romeo Aranas, alleging the denial of medical treatment in violation of his Eighth Amendment rights. Doc. 107, 111. Defendants Bannister and Morrow[1] now move for summary judgment in their favor arguing that Llavata's claim "amounts to nothing more than a difference" of opinion between himself and NDOC's personnel regarding his proper course of medical treatment and falls far below the deliberate indifference and deprivation of minimal civilized measure of life's necessities needed to prevail under Eighth Amendment standards. Doc. 83. Having considered the moving papers and

---

[1] Plaintiff added Dr. Aranas as a defendant in his Second Amended Complaint filed on April 9, 2013. To date, Dr. Aranas has made no appearance in this case, and he is not a summary-judgment movant.

1

1  construing liberally Plaintiff's operative complaint and opposition to the motion for summary

2  judgment,[2] the Court now grants summary judgment in favor of Bannister and Morrow for the

3  reasons set forth below.

4      Llavata also asks for reconsideration of the Court's previous decision to seal his medical

5  records, an order entered at the request of the government when offering the medical records as

6  exhibits in support of their motion for summary judgment.  Doc. 86, 88, 92.  Finding no error in the

7  decision to seal these records, and even if this request is liberally construed as one to unseal the

8  records, the Court finds it in Plaintiff's best interest to keep these confidential medical documents

9  sealed from public view and thus denies the motion for reconsideration.  Doc. 92.

10                          **Background**

11     Plaintiff Llavata has been an inmate in the Nevada state prison system since December 8,

12  2009.  Doc. 107 at 9.  He sues Morrow, Associate Warden of Hospital at High Desert State Prison,

13  in Morrow's official and individual capacities.  Doc. 107 at 2.  He also sues Bannister, Medical

14  Director at High Desert State Prison, in both capacities.  Doc. 107 at 2.

15     Llavata alleges that, after a motorcycle accidence in 2001, he underwent a surgery that

16  placed a titanium rod and six screws in his left leg.  Doc. 107 at 3.  He states that medical

17  professionals informed him that he needed to wait five to six years to "further fix" the meniscus

18  within his knee and to remove or replace the screws.  *Id*. at 3.  He was arrested September 9, 2009,

19  convicted, and subsequently incarcerated by NDOC.  *Id*. at 3–4.  In his Second Amended Complaint,

20  Llavata writes that he has had "trouble sleeping" because of the pain in his leg and has "struggle[d]

21  to get to and from meal feedings.'"  *Id*. at 6.  As he understands it, this may be "because the screws

22

23

24      [2]  The Court construes pro se prisoner filings—however inartfully drafted—liberally.  *See Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003) (courts must construe pro se motions

25  and pleadings liberally); *accord*, *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).  Plaintiff was timely provided with the notice required under *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en

26  banc), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).  Doc. 85.  The Court finds these motions appropriate for resolution without oral argument.

27  L.R. 78-2.

28                           2

1    in [his] left leg need[] to be shortened or replaced," but Aranas "simply dismiss[ed] this request and

2    also denied [him his] request for a blood pressure check" *Id*. at 6.

3          Defendants provide a list of 48 medical kites (i.e., informal, written prisoner requests) that

4    Llavata submitted between December 24, 2009, and June 17, 2011.  Doc. 83 at 3–5; Doc. 83-1.

5    They seek a range of medical assistance, from reading glasses to leg-injury-related supplies.  *See*

6    Doc. 83 at 3–5.  21 of these kites—counting generously, given the brevity and ambiguity of

7    some—pertained to Llavata's leg pain.  *Id*. at 3–5.  His kites repeatedly requested medical

8    appointments, mentioned that showering caused his scab to soften and caused his leg to bleed, and

9    sought bandages and gauze.  *Id*. at 3–5.  Defendants supply 59 pages of progress notes and other

10   medical records that prison staff maintained in attending to Llavata's medical needs.  Doc. 83-2;

11   Doc. 88.  While filed under seal, these documents indicate awareness of and prompt attention to

12   Llavata's concerns by prison staff.  *See* Doc. 88.

13         Llavata claims that, from December 8, 2009, to January 20, 2011, he "only received a total of

14   24 IBU (ibprofen) [sic] pills for the pain and a few bandaids and gauze bandages" for his leg, which

15   was bleeding.  Doc. 107 at 4.  He further states that he saw doctors only three times during his one-

16   year, 43-day stay at High State Desert Prison, with Dr. Aranas attending to him during two of the

17   three appointments.  *Id*.  Defendants respond that medical personnel prescribed pain medication,

18   provided gauze for Llavata's wound, and "advised Plaintiff to cease picking at surgical scab, which

19   was causing the area to bleed."  *See id*. at 9.  Further, they cite the medical records under seal in

20   submitting that medical providers evaluated Llavata "on at least seventeen (17) occasions

21   subsequent to his intake of December 29, 2009."  *Id*. at 9.  Llavata was transferred to Nevada's

22   Lovelock Correctional Center on January 20, 2011, and maintains that he is "still in pain and in need

23   of surgery to repair [his] 'maniscus' [sic] or to replace or remove the screws in [his] leg."  Doc. 107

24   at 4.  Further, he claims his leg bleeds due to a wound sustained during a fall; this condition worsens

25   when he showers.  Llavata appears to believe he needs surgery to address this condition, too.  *Id*. at

26   4.

27

28

3

There is no indication, however, that Morrow or Bannister personally attended to Llavata's medical needs. The record reflects only that these Defendants helped administer the prison's internal appeals process: Morrow apparently reviewed Llavata's first-level grievance, Doc. 107 at 6–7; Doc. 107 at 30 (Ex. 5), while Bannister signed the second-level grievance, "agree[ing] with the first level response." Doc. 107 at 35 (Ex. 7). Llavata argues that, rather than agreeing with Morrow, Bannister "should have provided [him] with the proper and adequate medical care." *Id*. at 7.

Llavata asserts one claim against Defendants Morrow, Bannister, and Aranas: that "they knowingly ignored and denied medical treatment to [his] leg and left knee which require[] surgery," in violation of his Eighth Amendment rights. *Id*. at 5. He prays for compensatory damages, punitive damages, and a declaratory judgment or injunction requiring surgery. *Id*. at 11. In moving for summary judgment, Morrow and Bannister allege that this litigation "amounts to nothing more than a difference between Plaintiff's personal lay opinion and Defendants" regarding the proper course of medical treatment Doc. 93 at 9.

### Discussion

**A.    Morrow and Bannister Are Properly Sued in their Official and Individual Capacities.**

As a threshold question, the Court must determine whether Morrow and Bannister can be sued in both official and individual capacities, as Llavata states in his complaint. Doc. 107 at 2. An official-capacity suit against a public official is a suit against the local government itself. *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 691 n.55 (1978); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Official capacity suits trigger a search for policy and custom, where injunctive relief is sought or where monetary relief "ancillary" to injunctive relief is sought. *L.A. Cnty. v. Humphries*, 131 S. Ct. 447, 453–54 (2010); *Kentucky v. Graham*, 473 U.S. 159, 169 n.18 (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)); *Hafer*, 502 U.S. at 25 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Punitive damages are not permitted against municipalities unless taxpayers perpetrate outrageous constitutional abuse. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 n.29, 271 (1981). A municipality may not assert qualified

4

1   immunity in a 1983 action, so an individual employed by the municipality may receive qualified

2   immunity even if it does not.  *See Owen v. City of Independence*, 445 U.S. 622, 638 (1980).

3         To sue a state official in his personal capacity, the complaint must specify that the plaintiff

4   brings suit against the person in his personal or individual capacity.  *Shoshone-Bannock Tribes v.*

5   *Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1285 (9th Cir. 1994).  "[O]n the merits, to establish

6   *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state

7   law, caused the deprivation of a federal right."  *Hafer*, 502 U.S. at 25 (emphasis added) (citation

8   omitted) (internal quotation marks omitted).  This suit triggers a qualified immunity defense, "such

9   as objectively reasonable reliance on existing law," but it does not trigger a search for policy or

10  custom as the moving force behind the constitutional violation.  *See id.* (citation omitted).

11  Compensatory and punitive damages are both allowed.  *See Smith v. Wade*, 461 U.S. 30, 46–49, 55

12  (1983) (citations omitted); *Larez v. City of Los Angeles*, 946 F.2d 630, 648 (9th Cir. 1991) (citations

13  omitted).

14         Llavata indicates that he brings official and individual capacity suits as to all defendants.

15  He does not allege that a municipal policy or custom is the moving force behind this alleged Eighth

16  Amendment violation, but he seeks injunctive relief that would result in surgery "to repair [his]

17  'maniscus' and remove/replace screws."  Doc. 107 at 11.  In addition, he seeks compensatory and

18  punitive damages "exceeding $10,000.00 per defendant."  *Id.* at 11.  Liberally construed, Llavata's

19  complaint states a deliberate indifference claim against Defendants in both their individual and

20  official capacities.  The evidence, however, supports neither claim.

21  **B.    Morrow and Bannister Are Entitled to Summary Judgment on All Theories Because
        the Facts Giving Rise to Llavata's Claim Do Not Rise to the Level of an Eighth**
22  **      Amendment Violation.**

23         Summary judgment is appropriate when "the pleadings, depositions, answers to

24  interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine

25  issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *See*

26  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).  When considering

27  the propriety of summary judgment, the court views all facts and draws all inferences in the light

28

5

most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on the material facts at issue, summary judgment is not appropriate because the purpose of summary judgment is to avoid unnecessary trials when the facts are undisputed. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor. *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49. The Court may only consider properly authenticated, admissible evidence in deciding summary judgment. Fed. R. Civ. P. 56(c); *Orr*, 285 F.3d at 773–74.

### 1.   *Mr. Llavata Has Failed to Establish Deliberate Indifference in his Medical Care.*

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action" when a prisoner brings a claim under the Eight Amendment and under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "The state of mind for deliberate indifference is subjective recklessness." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825,835–41 (1994)). Yet "the standard is less stringent" when prisoners face medical needs because, in this context, the state's duty to provide medical care does not typically conflict with prisons' administrative concerns. *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992)). Here, deliberate indifference does not require judicial deference to prison officials' judgment, whether those officers are administrators or doctors. *Id.* at 985–86 (quoting *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)).

6

1      In this Circuit, the deliberate indifference test has two prongs. *Jett v. Penner*, 439 F.3d 1091,

2    1096 (9th Cir. 2006) (citation omitted).  First, a serious medical need must exist, such that failure to

3    treat the prisoner "could result in further significant injury or [in] the 'unnecessary and wanton

4    infliction of pain.'"  *Id.* (citing *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992)); *see also*

5    *Estelle*, 429 U.S. at 104.  This serious need can be established through an injury that "a reasonable

6    doctor or patient would find important and worthy of comment or treatment," by a condition that

7    "significantly affects an individual's daily activities," or through "chronic and substantial pain."

8    *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX*

9    *Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (citing *Wood v. Housewright*, 900 F.2d

10   1332, 1337–41 (9th Cir. 1990); *Hunt v. Dental Dept.*, 865 F.2d 198, 200–01 (9th Cir. 1989)).

11   Second, a prisoner must demonstrate that defendants responded with "a purposeful act or failure to

12   respond to a prisoner's pain or possible medical need" and that "harm [was] caused by the

13   indifference."  *Id.* (citation omitted).  Indifference may be established when the prisoner can show

14   that officials "denied, delayed, or intentionally interfered with [needed] surgery"—or where "the

15   way prison staff delivered medical care indicated deliberate indifference."  *Id.* (citation omitted).

16      The Ninth Circuit does not require a prisoner to show substantial harm.  *Wilhelm v. Rotman*,

17   680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006))

18   (citation omitted).  An inadvertent failure to provide adequate medical care, however, cannot

19   establish liability.  *Id.* (citations omitted).  Further, if a plaintiff can show "nothing more than a

20   difference of medical opinion as to the need to pursue one course of treatment over another," then

21   the claim is "insufficient, as a matter of law, to establish deliberate indifference."  *Id.* (quoting

22   *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)) (internal quotation marks omitted).

23      Llavata's documented history of chronic leg pain satisfies the first prong of the *Jett* test.

24   Both Llavata and the prison medical staff have found this condition worthy of comment—and of

25   ongoing treatment.  His continued need for bandages, and the bleeding that frequently or always

26   occurs when he showers, also show that his daily activities are "significantly affected" by his

27   condition.

28                                                    7

It is on the second prong, however, that Llavata's claim fails.  The deliberate indifference test requires Llavata to establish that prison officials purposefully failed to respond to his needs—and that this failure harmed him.  The Court reviews the medical records provided under seal and Defendant's motions, along with all relevant filings by Plaintiff, in determining whether there is any evidence upon which a jury could conclude that prison officials intentionally withheld or denied medical attention.  Doc. 83; Doc. 81-1; Doc. 83-2; Doc. 88; Doc. 105; Doc. 107; Doc. 108.  The records under seal reflect that Llavata has received medical care ubiquitously throughout his incarceration.  Doc. 88.  There are nearly 250 unique, dated entries that indicate medical attention of varying kinds during Llavata's incarceration.  With regard to his leg, many entries show attention from medical staff; directions on caring for his wound; and the provision of medication, gauze, and additional supplies.  Doc. 88.

Even when viewed in the light most favorable to Llavata, there is not a scintilla of evidence—and Llavata identifies none—that indicates that officials engaged in "a purposeful act or failure to respond to a prisoner's pain or possible medical need."  *Jett*, 439 F.3d at 1096 (citation omitted).  Instead, it shows that the medical staff and Llavata disagree as to the appropriate way to treat his ongoing leg and knee pain.  By Llavata's own admission, he discussed whether "the screws in [his] left leg need[] to be shortened or replaced" with Dr. Aranas, who disagreed.  *See* Doc. 107 at 6.  As a matter of law, this difference of opinion fails to establish the purposeful harm required to prove an Eighth Amendment deliberate indifference claim.  *Wilhelm*,  680 F.3d at 1122 .  Accordingly, Morrow and Bannister are entitled to summary judgment on Llavata's claims against them in their individual capacities.

### 2. *Llavata Has Not Shown Harm Caused by Defendants Morrow or Bannister.*

In their Motion for Summary Judgment, Defendants treat Llavata's claim as a supervisory liability claim.  Doc. 83 at 10.  Under Section 1983, "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)).  Yet unlike his subordinates'

8

1   involvement, "which ordinarily is direct and personal, his participation may involve the setting in

2   motion of acts which cause others to inflict constitutional injury."  *Larez v. City of L.A.*, 946 F.2d

3   630, 645 (9th Cir. 1991) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir.1978)).

4        As Defendants further observe, prisoners in the Ninth Circuit have no "separate

5   constitutional entitlement to a specific prison grievance procedure."  Doc. 83 at 11 (quoting *Ramirez*

6   *v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)); *cf. Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir.

7   2002) (writing that "denial of [a prisoner's] grievances d[oes] not state a substantive constitutional

8   claim").  Plaintiff does not allege that Morrow and Bannister had any direct, personal involvement in

9   his situation beyond reviewing and denying his prisoner grievances.  It could be that Morrow and

10  Bannister are sued in their official capacities as Associate Warden of Hospital and as Medical

11  Director, on a theory of supervisory liability.  Yet there are no facts to support their involvement in

12  any aspect of Llavata's medical care beyond the grievance process—and the grievance procedure is

13  not a basis on which Llavata can prevail on a § 1983 claim.  *See Ramirez v. Galaza*, 334 F.3d 850,

14  860 (9th Cir. 2003)).  Further, even if Morrow and Bannister were involved in supervisory

15  capacities, there is no evidence in the record to suggest deliberate indifference on the part of any of

16  their subordinates.  Accordingly, to the extent that Plaintiff intended to state a supervisory liability

17  claim against Morrow and Bannister, the complete absence of supporting evidence in the record on

18  this theory compels summary judgment.

19
20       ***3.     Llavata has not demonstrated that any policy or custom violated his constitutional rights.***

21       The same is true of any *Monell* theory.  Civil rights plaintiffs often wish to move from an

22  offending individual to his governmental institution.  Under *Monell v. Department of Social*

23  *Services*, suing a municipal official in his official capacity for an 1983 violation is the same as suing

24  the state itself.  This only applies to constitutional torts committed pursuant to official policy, as

25  established by written law, usage, custom, or tradition.  *Monell*, 436 U.S. at 690–91.  *Monell*'s

26  official policy requires courts to "distinguish acts of the *municipality* from acts of *employees* of the

27  municipality, and thereby make clear that municipal liability is limited to action for which the

28                                          9

municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986) (emphases in original).

The Court finds no deliberate indifference under the Eighth Amendment.  Even if it did, however, Llavata does not allege that any policy or custom that was the moving force behind prison officials' decision to deny him surgery.  Nor does the Court find evidence of any policy or practice to prevent Nevada inmates from receiving the medical care they need, whether that medical care takes the forms of medical supplies such as gauze and bandages or whether that care constitutes surgical procedures.  On the contrary, the Court finds that Llavata received personal attention from the prison medical staff, and that the staff and Llavata have a difference of opinion regarding whether surgery is necessary.  There is simply no evidence in this record to support a *Monell* claim. Thus, to the extent that Plaintiff intended to state one against Morrow or Bannister, summary judgment is granted on that theory.

**C.    The Court Denies Llavata's Request for Reconsideration of Its Order Sealing Medical Records from Public Access.**

Plaintiff Llavata also asks this Court to reconsider its Order (Doc. 86) granting Morrow and Bannister's request to seal Llavata's confidential medical records.  Doc. 92.  This was done to prevent entry of Plaintiff's medical records into the public record and to protect Plaintiff's confidentiality.  Doc. 103 at 1.  Although the documents were sealed from public view, Plaintiff was provided a copy of the documents so he could fairly respond to the motion for summary judgment. Doc. 87, 96, 103.  Llavata was also granted extensions of time to respond to the motion for summary judgment.  *See* Docs. 97, 103 at 3.  He contends that the sealing of these documents denies him meaningful access to the courts.  Doc. 92.  His argument appears to be based on the misconception that the documents were being sealed to prevent *him and the Court* from accessing them.  *Id*. at 6.

/ / /

/ / /

/ / /

/ / /

10

1   The record clearly reflects that this is not the case; both Plaintiff and the Court were given timely

2   access to these documents.  *See* Doc 103.[3]

3        Motions for reconsideration are not expressly authorized in the Federal Rules of Civil

4   Procedure, but district courts may grant them under Rule 59(e).  *See Sch. Dist. No. 1J, Multnomah*

5   *Cnty. v. ACandS, Inc.*, 179 F.3d 656, 665 (9th Cir. 1999).  Reconsideration is only warranted when:

6   (1) the movant presents newly discovered evidence, (2) the district court committed clear error or

7   the initial ruling was manifestly unjust, or (3) there is an intervening change in controlling law.  *Id.*

8   (citing *All Haw. Tours, Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 648 (D. Haw. 1987)).

9   Although reconsideration may also be warranted under other highly unusual circumstances, it is well

10   recognized as an "extraordinary remedy, to be used sparingly in the interests of finality and

11   conservation of judicial resources."  *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2007) (quoting

12   12 James Wm. Moore et al., *Moore's Federal Practice* § 59.30[4] (3d ed. 2000)).

13        The Court finds no new evidence, clear error, or manifest injustice, or intervening change in

14   law that would warrant changing the outcome he now challenges.  On the contrary, the privacy

15   considerations that led to sealing Llavata's medical records remain compelling.  Moreover, Llavata

16   was authorized by court order to review the records under seal, so he was able to access their

17   contents and thereby continue prosecuting his case and accessing the courts.  *See* Doc. 86 at 2.  To

18   the extent that his request should be more liberally construed as one to unseal his records, the Court

19   finds that it remains in the best interest of this pro se prisoner plaintiff that these confidential

20   medical records remain sealed from public access by strangers to this litigation.  Accordingly, the

21

22        [3] Defendants filed their Motion for Leave to File Exhibit Under Seal on December 19, 2012, and
23   it was granted on December 20, 2012.  Doc. 84; Doc. 86.  The Motion and Order specified that a copy
   of the sealed progress notes and medical records would be maintained at the Northern Nevada
24   Correctional Center, "with instructions to maintain the records in a safe and secure place outside of
   Plaintiff's immediate possession and to permit Plaintiff to review the exhibit by appointment."  Doc.
25   84 at 2; Doc. 86 at 2.  Llavata filed his opposition to the Motion to Seal and filed a Motion for
   Reconsideration on January 9, 2013.  Doc. 91; Doc. 92.  After some confusion surrounding whether he
26   could review the records, Llavata moved on January 22, 2013, for permission to review the medical
   records.  Doc. 93.  The Court found that, because Llavata was subsequently granted permission to
27   review his medical records, his motion for permission was moot.  Doc. 95; Doc. 96.  He was given an
   additional 90 days to review the records and respond to this motion for summary judgment.  Doc. 103.

28                                                    11

1    Court denies Llavata's Motion for Reconsideration, Doc. 92; the documents properly remain under

2    seal.

3    **D.      Notice of Intent to Dismiss Claim against Dr. Aranas (Doc. 110)**

4            Dr. Aranas was added as a defendant in this case in Plaintiff's Second Amended Complaint,

5    first filed on April 9, 2013.  Doc. 107.  Under the rules of this Court, Plaintiff was required to serve

6    the summons and complaint on Dr. Aranas within 120 days of filing the Second Amended

7    Complaint.  Federal Rule of Civil Procedure 4(m) states: "If a defendant is not served within 120

8    days after the complaint is filed, the court—on motion or on its own after notice to the

9    plaintiff—must dismiss the action without prejudice against that defendant or order that service be

10   made within a specified time.  But if the plaintiff shows good cause for the failure, the court must

11   extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).[4]  Proof of service is

12   demonstrated by filing an affidavit of service attesting how and when proper service was performed.

13   Fed. R. Civ. P. 4(l).

14           Plaintiff was provided with a Notice Regarding Intention to Dismiss Pursuant to Rule 4(m)

15   on October 17, 2013.  Doc. 110.  Unfortunately, a typographical error in that notice made it

16   potentially unclear as it did not identify the party for whom proof of service had not been filed (i.e.,

17   Dr. Aranas).  *See id.*  Plaintiff took some action in response: he refiled the Second Amended

18   Complaint along with a certificate of service stating that mailed it to the "Attorney's General Office"

19   and the Clerk of this Court on October 22, 2013.  Doc. 111.  It also appears that although the Court

20   directed the Clerk to serve Plaintiff's first amended complaint on the Office of the Attorney General

21   and directed that office to advise the Court whether it could accept service of process for Morrow

22   and Bannister, *see* Doc. 8 at 5, no similar instructions were provided with respect to service on Dr.

23   Aranas when he was added to the action in April.  *See* Doc. 103.  Thus, it is likely that Dr. Aranas

24   has not been served in this case, though the Office of the Attorney General has received service of

25

26   _____

27           [4] The Court *sua sponte* finds that the errors in the 4(m) notice and the failure to provide proper instruction to the Attorney General's Office constitute good cause to extend this deadline for service.

28                                                          12

the Second Amended Complaint through the CMECF system because that office represents Morrow and Bannister.[5]

Accordingly, to ensure fairness to this pro se plaintiff, the Court hereby strikes the Notice Regarding Intention to Dismiss Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  Doc. 110.  The Court further directs the Attorney General's Office to advise the Court within 21 days of the date of entry of this order whether it can accept service of process for Dr. Romeo Aranas.  If the Attorney General accepts service for Dr. Aranas, then Dr. Aranas shall file and serve an answer or other response to the complaint within **30 days** of the date of the notice of acceptance of service; if the Attorney General's Office cannot accept service, the Office shall file Dr. Aranas's last known address(es) under seal.  Llavata shall then file a motion identifying Aranas, requesting issuance of a summons, and specifying a full name and address for Aranas.  The Court shall require Llavata to effectuate service on Dr. Aranas within **60 days** of the date that the Attorney General's Office files Aranas's last known address under seal, if the Office cannot accept service.  Plaintiff Llavata is hereby cautioned that his failure to comply with this deadline shall result in automatic dismissal of the remainder of this action without prejudice.

## ORDER

Accordingly, and with good cause appearing,

**IT IS HEREBY ORDERED** that Defendants Morrow and Bannister's Motion for Summary Judgment **(Doc. 83) is GRANTED**; judgment on all claims is hereby entered in their favor.

**IT IS FURTHER ORDERED** that Plaintiff Llavata's Motion for Reconsideration **(Doc. 92) is DENIED**; the exhibits entered at Doc. 88 shall remain sealed.

**IT IS FURTHER ORDERED** that the Notice Regarding Intention to Dismiss Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure **(Doc. 110) is STRICKEN**;

---

[5] Under Special Order 109 in the District of Nevada, "[p]articipation in the CM/ECF registration system shall constitute consent to the electronic service of pleadings and other papers."   Special Order 109 at 2.  The District of Nevada Electronic Filing Procedures require, however, that complaints be served "in paper form."  Electronic Filing Procedures at 6.  Thus, once a hard copy complaint is properly served on a defendant who is registered in CM/ECF, all subsequent documents—including amended complaints—may be electronically served.

**IT IS FURTHER ORDERED** as follows:

1.  The Attorney General's Office shall advise the Court within 21 days of the date of entry of this order whether it can accept service of process for Dr. Romeo Aranas.

2.  If the Attorney General **accepts** service for Dr. Aranas, Dr. Aranas shall file and serve an answer or other response to the complaint within **30 days** of the date of the notice of acceptance of service.

3.  If the Attorney General's Office **cannot** accept service, the Office shall file Dr. Aranas's last known address(es) under seal.  Llavata shall then file a motion identifying Aranas, requesting issuance of a summons, and specifying a full name and address for Aranas.  The Court shall require Llavata to effectuate service on Dr. Aranas within **60 days** of the date that the Attorney General's Office files Aranas's last known address under seal, if the Office cannot accept service.  Failure to comply with this deadline shall result in automatic dismissal of the remainder of this action without prejudice.

DATED February 18, 2014.

_____
Jennifer A. Dorsey
United States District Judge